1
**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA**

2

3
- - - - - - - - - - - - - - -

4
United States of America,  )

5
              Plaintiff,   )

6
        vs.                )   **FILE NO. 3:19-cr-42**

7
Sijie Liu,                 )

8
              Defendant.    )

9
- - - - - - - - - - - - - - -

10

11

12

13
**T R A N S C R I P T**

14
**O F**

15
**P R O C E E D I N G S**

16
**(Change of Plea & Sentencing)**

17
**June 22, 2020**

18
**Pages 1-49**

19

20

21

22
HELD AT: QUENTIN BURDICK UNITED STATES COURTHOUSE

23
        655 FIRST AVENUE NORTH
        FARGO, NORTH DAKOTA  58102

24
BEFORE:  THE HONORABLE PETER D. WELTE

25
COURT REPORTER:  KELLY A. KROKE

**A P P E A R A N C E S**

**MR. NICHOLAS W. CHASE**               **COUNSEL FOR PLAINTIFF;**
Acting U.S. Attorney
655 1st Avenue North, Ste. 250
Fargo, ND 58102


**MR. ALEXANDER REICHERT**             **COUNSEL FOR DEFENDANT;**
Attorney at Law
118 Belmont Road
Grand Forks, ND  58201

```
 1                  P R O C E E D I N G S
 2                  (June 22, 2020:  The following proceedings
 3     commenced at 11:05 a.m.:)
 4                  THE COURT:  We're on the record in United
 5     States of America versus Liu.  Am I pronouncing that
 6     correctly?
 7                  THE DEFENDANT:  Yes.
 8                  THE COURT:  Very good.  The defendant is
 9     present.  Good morning, ma'am?
10                  THE DEFENDANT:  Good morning.
11                  THE COURT:  She is represented by Alex
12     Reichert.
13                  Good morning, Mr. Reichert.
14                  MR. REICHERT:  Good morning, Your Honor.
15                  THE COURT:  And the United States is
16     represented by Nick Chase.  Good morning, Mr. Chase.
17                  The Department of Probation is present as
18     well via interactive television.  We are here for a
19     change of plea and sentence pursuant to a Plea Agreement
20     that had been filed with the District Court on the 23rd
21     of March, 2020.  I have a Superseding Indictment that
22     we're proceeding on that was filed with the District
23     Court as document No. 17 on April 17th of 2019.
24                  I show that Ms. Liu has been in custody
25     since March 5 of 2019; is that correct, ma'am?
```

```
 1                    THE DEFENDANT:  That's correct, Your Honor.
 2                    THE COURT:  What I show is that there will
 3     be a plea to Count Two of the Superseding Indictment.
 4                    Mr. Chase, does that look correct?
 5                    MR. CHASE:  Yes, it is, Your Honor.
 6                    THE COURT:  Thank you, sir.  We have several
 7     people in the courtroom today.  Mr. Chase, do we
 8     anticipate an evidentiary hearing?
 9                    MR. CHASE:  No, Your Honor.
10                    THE COURT:  Mr. Reichert, do you have
11     anybody who will be presenting testimony besides your
12     client?
13                    MR. REICHERT:  I do not, Your Honor.
14                    THE COURT:  Thank you.  Ms. Liu, what I'd
15     like to do, having established your presence and the
16     presence of your attorney and First Assistant United
17     States Attorney Chase, is I would like to have you be
18     placed under oath and then we'll have a conversation
19     between us, okay?  So you may remain seated.  Please
20     raise your right hand and the clerk of court will
21     administer an oath.
22                    (Oath administered.)
23                    THE COURT:  And, ma'am, just a couple
24     things.  You can pull that microphone as close as you
25     can and I appreciate that you're masked but it would
```

```
 1   help the court reporter for you to remove your mask if
 2   you're comfortable with that, if you and your counsel
 3   are.  Then you'll want to speak as clearly as you can
 4   into the microphone.
 5              I'll start out with how are you feeling this
 6   morning?
 7              THE DEFENDANT:  I'm feeling okay.  Thank you
 8   for asking, Your Honor.
 9              THE COURT:  Sure.  You're clearheaded this
10   morning?
11              THE DEFENDANT:  Yes, I am.
12              THE COURT:  You have had an opportunity to
13   confer with your counsel, Mr. Reichert?
14              THE DEFENDANT:  I have.
15              THE COURT:  Okay.  Are you wanting to
16   proceed with the hearing this morning?
17              THE DEFENDANT:  Yes, I do.
18              THE COURT:  Are you satisfied with the
19   representation that you've received in this matter?
20              THE DEFENDANT:  Yes.
21              THE COURT:  Ms. Liu, you are under oath so
22   any statement that you make is subject to scrutiny so
23   it's important that you are truthful, okay?
24              THE DEFENDANT:  Yes.  Thank you, Your Honor.
25              THE COURT:  You're welcome.  And you're not
```

1    under the influence of any drugs or alcohol this
2    morning?

3            THE DEFENDANT:  No, I'm not.

4            THE COURT:  I have the Superseding
5    Indictment and what I'd like to do is just review Count
6    Two with you.  Count Two states that on the Superseding
7    Indictment that the grand jury charges that between on
8    or about February 15 of 2019 and March 5 of 2019, in the
9    District of North Dakota, that you did knowingly attempt
10   to acquire, transfer, directly and indirectly, receive,
11   retain, own, possess and use and threaten to use a
12   chemical weapon, in violation of Title 18, United States
13   Code, Section 229(a)(1) and (2).  As I indicated this is
14   Count Two of the Indictment.  The Superseding Indictment
15   also consists of a Count One, false statements, and a
16   Count Two of fictitious name or address.  If we end up
17   not moving forward pursuant to the Plea Agreement, I
18   will review those other two counts with you but at this
19   point it would appear to be not necessary.

20           Do you understand the charge in the
21   Superseding Indictment?

22           THE DEFENDANT:  Yes, I do, Your Honor.

23           THE COURT:  Okay.  Ms. Liu, I have a Plea
24   Agreement in front of me and a Plea Agreement
25   Supplement.  The Plea Agreement is document No. 38 on

1    the criminal docket and the Plea Agreement Supplement is

2    document No. 39.

3              Mr. Chase, with regards to reviewing the

4    Plea Agreement and the Supplement -- actually this

5    question is better directed to Mr. Reichert.

6              With regards to reviewing the Plea Agreement

7    and the Plea Agreement Supplement, Mr. Reichert, do you

8    anticipate a time during the hearing where it will be

9    prudent to go in-camera to review the supplement or

10   would that be something that's not necessary, sir?

11             MR. REICHERT:  I think in an abundance of

12   caution, Your Honor, that would make some sense.

13             THE COURT:  Well, then here's what we're

14   going to do.  I'm going to review the Plea Agreement

15   itself with you and then I'm going to go in-camera and

16   we'll empty the courtroom to review the Plea Agreement

17   Supplement.  After we're done with the supplement then

18   we'll let everybody come back into the courtroom, reopen

19   the proceeding and then we'll proceed, okay?

20             THE DEFENDANT:  Sounds good, Your Honor.

21             THE COURT:  Okay.  Ms. Liu, with regards to

22   the Plea Agreement, if you have any questions at any

23   time, don't hesitate to get the attention of your

24   attorney or my attention.  Your attorney has a

25   tremendous amount of experience in federal court.  We

1   can stop the proceeding at any time and have you consult

2   with your counsel, okay?

3            THE DEFENDANT:  Sounds good.  Thank you,

4   Your Honor.

5            THE COURT:  You're welcome.  The Plea

6   Agreement indicates that the charges in the Superseding

7   Indictment are as I've set forth.  They indicate that

8   you've read the charges and that your attorney,

9   Mr. Reichert, has fully explained the charges to you.

10  The Plea Agreement indicates that you fully understand

11  the nature and the elements of the charged crime.  The

12  Plea Agreement indicates that you'll voluntarily plead

13  guilty to Count Two of the Superseding Indictment.

14            Is that accurate, Ms. Liu?

15            THE DEFENDANT:  That is accurate, Your

16  Honor.

17            THE COURT:  Okay.  Paragraph 5 sets forth

18  that this is a nonbinding Plea Agreement.  Do you

19  understand the difference between a nonbinding and a

20  binding Plea Agreement?

21            THE DEFENDANT:  My attorney explained it to

22  me, yes.

23            THE COURT:  Okay.  Basically a nonbinding

24  Plea Agreement, which is what this is, dictates that if

25  the Court refuses to accept any or all of the terms that

1   we would still proceed and you would not be given the

2   right to withdraw your guilty plea.  I'll tell you and

3   your attorney and the attorney for the United States

4   that my intent -- absent something extraordinary, my

5   intent is to accept the Plea Agreement, okay?

6            THE DEFENDANT:  Thank you.

7            THE COURT:  Paragraph 6 in the Plea

8   Agreement is a factual basis and I will reserve the

9   entering of the factual basis until you enter your plea.

10  But have you had an opportunity to review paragraph 6

11  and do you understand it?

12           THE DEFENDANT:  Yes, I had the opportunity

13  to review it and I understand it, Your Honor.

14           THE COURT:  Okay.  The maximum penalty for

15  Count Two is any term of years.  So life imprisonment

16  would -- could be the maximum penalty.  The maximum fine

17  is $250,000.  The maximum term of supervised release is

18  not more than five years.  There is a $100 special

19  assessment that must be applied to this.

20           Do you understand?

21           THE DEFENDANT:  Yes, Your Honor.

22           THE COURT:  Okay.  Paragraph 8 on page 3 of

23  9 delineates several subparagraphs that set forth the

24  rights that you are surrendering by pleading guilty.

25           With regards to the first paragraph, you are

1   surrendering the right to a speedy public jury trial.

2   That jury would be composed of 12 people selected at

3   random.  You and Mr. Reichert would choose those jurors.

4   That jury would be instructed, Ms. Liu, that they would

5   have to return a unanimous verdict.  I want you to

6   understand that I would instruct the jury that you are

7   presumed innocent and that that jury could not find you

8   guilty unless they came back unanimously in favor of

9   guilt.

10              Additionally, Mr. Chase and the United

11   States of America would bear the entire burden of proof.

12   You would have no burden of proof at a trial.  They

13   would have to find you guilty beyond a reasonable doubt.

14   And in our system beyond a reasonable doubt is the

15   highest burden of proof in the judicial system.

16              Do you understand that?

17              THE DEFENDANT:  Yes, I do, Your Honor.

18              THE COURT:  And do you wish to waive your

19   right to a jury trial?

20              THE DEFENDANT:  Yes.

21              THE COURT:  With regards to that trial, you

22   would have the opportunity to present witness testimony.

23   You would have the opportunity to cross-examine

24   witnesses that the United States brought.  You would

25   have the opportunity to examine their evidence.  If you

1  had witnesses that you wanted brought to court but had a
2  hard time finding them or you couldn't get them here,
3  the Court would issue a subpoena requiring them to be
4  here on your behalf.
5            Do you understand that?
6            THE DEFENDANT:  Yes, I do, Your Honor.
7            THE COURT:  And do you wish to waive that
8  right?
9            THE DEFENDANT:  Yes.
10            THE COURT:  Okay.  I would instruct the
11  jury, Ms. Liu, that you have a privilege against
12  self-incrimination.  You could decline to testify and
13  that jury would be instructed that they can draw no
14  inference of guilt from your refusal to testify.  So you
15  could testify but you would not be required to testify.
16            Do you wish to waive your privilege against
17  self-incrimination?
18            THE DEFENDANT:  Yes, I do, Your Honor.
19            THE COURT:  You have the right to remain
20  silent as well but under the terms of this Plea
21  Agreement I'm asking you questions to ensure there's a
22  factual basis for your plea.
23            Do you understand that?
24            THE DEFENDANT:  I do understand.
25            THE COURT:  By pleading, Ms. Liu, you would

1    be pleading guilty and giving up all of the rights set

2    forth in paragraph 8.  There would be no trial.

3    Paragraph 9 indicates that Mr. Reichert has explained

4    those rights to you and the consequences of your waiver;

5    is that correct?

6                    THE DEFENDANT:  That's correct, Your Honor.

7                    THE COURT:  So would you be pleading guilty

8    because you are in fact guilty of the crime as charged?

9                    THE DEFENDANT:  Yes.

10                   THE COURT:  Okay.  I will be imposing a

11   sentence in this matter that is sufficient but not

12   greater than necessary to set forth -- to comply with

13   the purposes of the Sentencing Reform Act.

14                   Has Mr. Reichert reviewed that with you?

15                   THE DEFENDANT:  Yes.

16                   THE COURT:  You understand that this Plea

17   Agreement is only binding upon Mr. Chase and his office,

18   that it's not binding upon any other United States

19   Attorney's office?

20                   THE DEFENDANT:  Yes.

21                   THE COURT:  And, Ms. Liu, this Plea

22   Agreement is not binding on any other state level or

23   local prosecutor as well.  Do you understand that?

24                   THE DEFENDANT:  Yes.

25                   THE COURT:  The United States Attorney does

1    reserve the right to notify any local or state or

2    federal agency by whom you're licensed or with whom you

3    do business of your conviction.  And at the same time

4    you are relying on representations from Canadian

5    officials that this Plea Agreement represents a global

6    resolution to this matter both in the United States and

7    in Canada; is that correct?

8                THE DEFENDANT:  That's correct, Your Honor.

9                THE COURT:  Mr. Chase, may I assume from

10   that that the government in Canada is not pursuing any

11   charges?

12               MR. CHASE:  Yes, Your Honor.  That is

13   certainly what all of our understanding is, yes.

14               THE COURT:  Thank you.  In the Presentence

15   Investigation -- or in the Plea Agreement, Ms. Liu, your

16   attorney and Mr. Chase have agreed that the base offense

17   level for sentencing is a 30 base offense level.  They

18   also have agreed that you would receive a two-level

19   downward adjustment for acceptance of responsibility and

20   a one-level downward adjustment for timely notification.

21               I'm blending the issues here a little bit

22   but I note that on the Presentence Investigation Report,

23   which is document No. 43 in the Register of Actions,

24   that pages 6 and 7 mirror the computation that is done

25   in the Plea Agreement.  So the calculation of the

1    offense level after adjustments is a 30.  That's what

2    was estimated in the Plea Agreement, and positively in a

3    good fashion that's also what the Presentence

4    Investigation Report indicates.

5            Do you have any questions about that?

6            THE DEFENDANT:  No, Your Honor.

7            THE COURT:  The reason that I bring that up

8    is that if the Presentence Investigation Report were

9    different than the Plea Agreement sometimes that

10   complicates things just a little bit but that isn't the

11   case here so I just wanted you to know that.

12           Now at sentencing, which would be today,

13   Ms. Liu, both parties agree to jointly recommend a

14   sentence of six years of imprisonment.  They recommend

15   that you be ordered to pay restitution in an amount to

16   be established today and that there would be a motion by

17   the United States to dismiss Count One and Count Three

18   of the Superseding Indictment.

19           Is that your understanding?

20           THE DEFENDANT:  That's correct, Your Honor.

21           THE COURT:  Mr. Chase, I note in the

22   Presentence Investigation Report that there is not a

23   restitution figure.  Is that accurate?

24           MR. CHASE:  That's correct, Your Honor.

25           THE COURT:  Okay.  This is something that I

 1    should have touched on at the beginning of the hearing,

 2    Mr. Chase, but under 18 U.S. Code 3771 the United States

 3    has a duty to notify victims of hearings and their right

 4    to attend.

 5              Has that been done in this case?

 6              MR. CHASE:  Yes, Your Honor.

 7              THE COURT:  Thank you.  Ms. Liu, paragraph

 8    17 sets forth that if you violate any terms of the Plea

 9    Agreement, if you engage in any further criminal

10    activity or if you fail to appear for sentencing that

11    the United States would be released from its

12    commitments.

13              Do you understand that?

14              THE DEFENDANT:  Yes, I do, Your Honor.

15              THE COURT:  Since we're having the change of

16    plea and the sentencing on the same day, that's not

17    going to happen so I'm just wanting to review that with

18    you and make sure that you understand that term.

19              THE DEFENDANT:  Thank you.

20              THE COURT:  You're welcome.  I will gloss

21    past paragraph 18 because that refers to restitution

22    which Mr. Chase has indicated doesn't apply.

23              The United States has indicated that it will

24    file a supplement in this case as is routinely done.

25    They have filed that supplement.  It is dated March 23rd

1    of 2020.  The supplement is document No. 39 in the

2    criminal docket.  The Plea Agreement is document No. 38.

3    We'll review the supplement shortly.  I'm going to

4    complete the Plea Agreement first.

5              With regards to the waiver of appeal in

6    paragraph 20, Ms. Liu, you have broadly and generally

7    waived your right to appeal in this Plea Agreement.  The

8    Eighth Circuit typically upholds those waivers.  Do you

9    understand that except in a couple of very limited

10   instances you have waived your right to appeal in this

11   matter?

12             THE DEFENDANT:  Yes, Your Honor.

13             THE COURT:  And is that your intent?

14             THE DEFENDANT:  Yes, Your Honor.

15             THE COURT:  Okay.  Paragraph 21 sets forth,

16   Ms. Liu, how you have waived your right to withdraw your

17   guilty plea or to attempt to withdraw your guilty plea.

18   In fact, if you attempted to withdraw your guilty plea

19   that could be considered a violation of the Plea

20   Agreement even.

21             Do you understand that?

22             THE DEFENDANT:  Yes, Your Honor.

23             THE COURT:  Do you still seek to waive that

24   right?

25             THE DEFENDANT:  Yes, Your Honor.

1              THE COURT:  The United States in paragraph

2    23 agrees that if following sentencing you seek a prison

3    transfer to Canadian custody the United States will not

4    oppose that request.  Do you understand that?

5              THE DEFENDANT:  Yes, Your Honor.

6              THE COURT:  Paragraph 24 indicates that you

7    have read and understand all provisions of the Plea

8    Agreement, that you and Mr. Reichert have discussed the

9    matter and reviewed the Plea Agreement and that you

10   understand your rights in this matter; is that correct,

11   Ms. Liu?

12             THE DEFENDANT:  Yes, that's correct, Your

13   Honor.

14             THE COURT:  Ms. Liu, does the Plea Agreement

15   in this matter represent your full understanding with

16   the United States of America?

17             THE DEFENDANT:  Yes, Your Honor.

18             THE COURT:  Ms. Liu, have any other promises

19   or assurances been made to you in an attempt to make you

20   plead guilty?

21             THE DEFENDANT:  I believe they are covered

22   in the Plea Agreement.  The two main promises that I

23   guess motivated me to accept this Plea Agreement is one,

24   it's a global resolution so that I will not be

25   prosecuted in Canada for the same offense, and the

1    second promise is that neither the United States

2    government nor the Canadian government will object my

3    request to transfer to Canada to serve my sentence.

4             THE COURT:  Very good.  Has anybody

5    threatened you to make you plead guilty?

6             THE DEFENDANT:  No.

7             THE COURT:  And you do understand that it is

8    a nonbinding Plea Agreement?

9             THE DEFENDANT:  Yes.

10             THE COURT:  Mr. Reichert, were all formal

11    plea offers in this matter communicated to your client?

12             MR. REICHERT:  They were, Your Honor.

13             THE COURT:  Ms. Liu, with a felony

14    conviction in our system there are certain rights that

15    are lost: the right to vote or to hold public office,

16    the right to possess a weapon, the right to serve on a

17    jury.

18             Do you understand that?

19             THE DEFENDANT:  Yes, Your Honor.

20             THE COURT:  And do you still wish to plead

21    guilty?

22             THE DEFENDANT:  Yes, Your Honor.

23             THE COURT:  Any questions about your rights

24    or the Plea Agreement?

25             THE DEFENDANT:  No, Your Honor.

1          THE COURT:  At this point we're going to go

2    in-camera.  I'm going to ask that those of you in the

3    courtroom please exit.  Lori will help to show you out

4    and as soon as we're done reviewing the Plea Agreement

5    Supplement we'll get back on the record and you'll be

6    welcome to come back in.  And the courtroom security

7    officer will let you know when that happens, okay?

8    We'll go in-camera.

9          (Observers removed from the courtroom and

10   the following in-camera proceedings were had:)

11         THE COURT:  Before we begin, Ms. Helderop,

12   are you able to hear me?

13         MS. HELDEROP:  I am, Your Honor.

14         THE COURT:  Thank you.  Okay.  I just wanted

15   to make sure.  I didn't check at the beginning of the

16   hearing.

17         Okay.  Mr. Reichert, do you want to explain

18   what's going on with the supplement, sir?

19         MR. REICHERT:  Thank you, Your Honor.  We

20   have a supplement in this case which contemplates a 5K1

21   given my client's substantial assistance to the

22   government.  It is the reason for the reduction from the

23   calculated guideline range in this case down to the six

24   years that we currently have.

25         If you would like the details of the

1    cooperation, we'd can provide that to you, the

2    government can provide it, however the Court would like

3    it.

4              THE COURT:  I'm perfectly fine without the

5    details.  I think part of it is delineated in paragraph

6    5.  I've also reviewed the file and the Presentence

7    Investigation Report so I can kind of read between the

8    lines on that as well.

9              Mr. Chase, is there anything that you'd like

10   to add about the supplement?

11             MR. CHASE:  No, Your Honor.  Just, you know,

12   only a little bit about the nature of her cooperation

13   just to create a good enough record on the 5K.  You

14   know, some of the information is still being verified

15   but to the extent that it can be verified law

16   enforcement determined it's a hundred percent truthful

17   to the extent she knows.  It is information that's not

18   related so much to this case but it is -- suffice to say

19   that especially given Ms. Liu is not somebody who is the

20   typical person who is -- finds themselves in jail very

21   often and has provided information that is of a type

22   that I would think most people would be -- have a high

23   level of concern about providing this kind of

24   information about these kinds of persons who have

25   perpetrated them.

1          So it is -- I just -- since we're in-camera

2     I just wanted to make that point.  I will make a 5K as

3     part of my recommendations and the 5K is already -- has

4     been filed on the record.  But I won't go too much into

5     it in my sentencing recommendation, Your Honor, but it

6     is the type of information that if I found myself in

7     jail and provided it would concern me very much about my

8     safety in jail and I'm sure Ms. Liu has been concerned

9     as well.

10          THE COURT:  Thank you, Mr. Chase.

11          Mr. Reichert, do you have anything further

12    to add before we go back on the record?

13          MR. REICHERT:  Yeah, I guess I will, Your

14    Honor, since this is the only chance that I will do this

15    and I know the Court is going to follow the Plea

16    Agreement most likely so I'm not going to expound.  But

17    my client upon incarceration in Grand Forks County found

18    herself a cellmate of a person from the Spirit Lake

19    Indian Reservation who was a very bad person to say the

20    least and found solace in confessing many crimes to my

21    client, including four unsolved murders on the

22    reservation, gun running, drug running.  So it was very

23    significant and as the Court can probably see I have

24    about an inch of yellow pages here.  The vast majority

25    of that is Steve Melby and the FBI officer and myself

1    sitting down on a weekly basis as Ms. Liu would come in

2    with notes written on toilet paper that she had hidden

3    to accurately write down everything that she was being

4    told.

5         So, yes, I think it was very significant

6    cooperation and I think that puts in context here why we

7    have come up with the sentence that we have.

8         THE COURT:  You know, the guideline range is

9    97 to 121 months.  Agreed-upon sentence is 72 months.

10   I've already indicated that my inclination would be to

11   accept the Plea Agreement.

12        Is it the United States' position that

13   imposition of a sentence of less than 72 months would be

14   rejecting a term of the Plea Agreement or would it be

15   accepting the Plea Agreement since the only promise is

16   that you'd make that recommendation?

17        MR. CHASE:  Your Honor, that's an unknown.

18   I'm sorry, that's an unknown.  I don't know how the

19   Canadians are going to interpret that.  I do think --

20   and this will be as part of my sentencing recommendation

21   and I'm not -- I don't want to jump the gun here.  There

22   was a lot of groundwork here done on -- I mean, on

23   anything.  I mean, any definition of what a substantial

24   step is in an attempted murder, I mean, there are -- I

25   can't imagine -- you know, I mean, there were a lot of

1   substantial steps.  There's more planning and steps

2   taken in this -- the not completed murder attempt than

3   there are in completed crimes.  I mean, you know, my

4   recommendation is -- is going to be that 72 months is

5   sufficient as Your Honor will see and I don't mean to

6   invite all of that now.

7            So that is going to be my recommendation,

8   you know, and six years was -- I mean, it is -- there's

9   a lot of factors that Mr. Reichert and I were weighing,

10  you know, with the Canadians with, you know, trying to

11  in some ways protect the defendant from a second

12  prosecution.  It's also extraordinary that we agreed to

13  the -- to not oppose the transfer to Canadian custody or

14  for prison transfer.  We've never agreed to that.

15           The reason we agreed to that more in this

16  case again -- you can cut me off because I'm way far

17  afield but it is -- it's partly to do with the

18  cooperation that was done in this case but it's also a

19  recognition of -- most of this crime is Canadian crime.

20  The victims are Canadian.  You know, the -- there was --

21  there was a reach into the dark web.

22           THE COURT:  I saw that on the Presentence

23  Investigation.

24           MR. CHASE:  That was the United States.  I

25  mean, this -- the obtaining of the toxin was going to

1    happen in the United States.  She crossed the border.

2    But, I mean, this crime is a crime in the United States,

3    you know, only -- a significant part in getting a highly

4    deadly toxin.  And obtaining that in the United States

5    and then going back is certainly a significant crime

6    that happened in this country.  But most of this crime,

7    the planning, the -- any carrying out is a Canad- -- so

8    that's also a significant sort of what we see as a --

9    that we've given in this Plea Agreement.

10          THE COURT:  And I'll interrupt you and if we

11    get into any more of that we'll just do it out of

12    in-camera but I do appreciate your elaboration,

13    Mr. Chase.  Thank you, very much.

14          Mr. Reichert, do you have anything further

15    to add?

16          MR. REICHERT:  Yeah, Your Honor, I do.  And

17    I think it makes sense that -- we're basically arguing

18    about the sentence here now and I think that makes sense

19    because it is so intertwined with the cooperation.  And

20    I echo what Mr. Chase said.  We would ask the Court also

21    to impose the six-year sentence because that is a global

22    resolution.  The Canadian officials -- part of their

23    reason for not prosecuting is an agreement that she will

24    get six years down here and so that is an integral part

25    of it.

1          So if the Court even -- if the Court thought

2    it was giving a benefit by doing that, it would probably

3    be a detriment because then she might be prosecuted in

4    Canada.  And, I mean, as you can imagine this is a

5    fantastic resolution in a lot of ways for my client.

6    She's never going to have a Canadian criminal record.

7    And she's an engineer and she is going to be looking for

8    a job so that will be very important to her and then

9    also the fact that she's going to, you know, serve

10   somewhere in the neighborhood of another year in Canada

11   once we get her transferred to Canada no matter what

12   this Court gives her for a sentence.

13          THE COURT:  Sure.  Thank you, Mr. Reichert.

14          Mr. Reichert, Mr. Chase, I have one more

15   thing that is appropriately handled in-camera.  I had

16   the United States marshal hand me a note and it is

17   written by a Greta Bundy.  "Honorable Judge Welte, if

18   you feel it is appropriate, may we please say a prayer

19   for Sijie before she leaves the courtroom today?  Greta

20   Bundy."

21          My response to that would be absolutely.

22   Ms. Liu will not be permitted any physical contact,

23   however, but a brief pause for a prayer would be

24   permissible.

25          Is that an okay response with the United

1   States and Mr. Reichert?

2              MR. CHASE:  Yeah.  I don't have an objection

3   to that, Your Honor.

4              MR. REICHERT:  I have no objection.  I just

5   asked my client if she would have an objection, Your

6   Honor, and she indicated that she would not.

7              THE COURT:  Okay.  I will hand this to the

8   clerk of court and if the deputy U.S.M. could come on

9   up.  Thank you, sir.

10             I think it's time to go back on the record.

11             (In-camera proceedings concluded and

12   observers allowed back into the courtroom.)

13             MR. REICHERT:  Your Honor, while the people

14   are filing in, I just would also like to put on the

15   record for the Court's information, my client did retain

16   Canadian counsel in this case and he has been involved

17   in a vast majority of the negotiations in this case just

18   so the Court is aware of that.

19             THE COURT:  Thank you.  I'll note that for

20   the record that Ms. Liu has retained Canadian counsel

21   and that Canadian counsel has been involved in the

22   negotiations in this matter as reflected by

23   Mr. Reichert.

24             Ms. Liu, do you have any questions at all

25   about your rights?

1           THE DEFENDANT:  No, I don't, Your Honor.

2           THE COURT:  Do you have any questions about

3    the Plea Agreement?

4           THE DEFENDANT:  No, Your Honor.

5           THE COURT:  And other than what we've

6    discussed, the Plea Agreement does represent your full

7    understanding with the government?

8           THE DEFENDANT:  (Nods head.)

9           THE COURT:  Yes?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  Okay.  Then how do you now plead

12   to charge two in the Indictment?  Do you plead guilty or

13   not guilty?

14          THE DEFENDANT:  Guilty.

15          THE COURT:  Mr. Chase, a factual basis?

16          MR. CHASE:  Your Honor, in January of 2019 a

17   person then unknown to the United States started

18   searching on the dark web for a toxin, a highly deadly

19   toxin to be purchased.  Negotiations occurred throughout

20   January -- I should just add, on that date around the

21   January 2019 when -- right after those communications on

22   the dark web had started occurring to purchase this

23   toxin, the defendant opened up a commercial mailbox in

24   Pembina, North Dakota under the name Julie Chen, which

25   was a false name and the -- she set this up remotely

1   with an e-mail address.  The Julie Chen mailbox was set

2   up with a password that matched a mailbox that the

3   defendant already had in her own name of Sijie Liu.

4          There's just a -- for the record there is

5   sort of a number of people who have -- Canadians have

6   mailboxes on just this side of the border because

7   shipping costs are expensive and so it is a legal common

8   function.  There's a number of commercial mailboxes in

9   Pembina, North Dakota that are owned by Canadians.

10         But in January of 2019 the defendant opened

11  one up in a different name, Julie Chen.  The

12  negotiations for that toxin, how it was going to be

13  delivered, what the cost was, occurred throughout

14  January-February.  Finally there was an agreement for

15  the defendant to purchase that toxin and have it sent --

16  she asked to have it sent to Pembina, North Dakota to

17  the commercial mailbox that she had created in the name

18  Julie Chen.

19         On March 5th of 2019, the defendant did --

20  after she had gotten receipt that the toxin -- what she

21  believed was a toxin being delivered, which actually the

22  people she was communicating with were undercover

23  employees with the FBI.  There was never a toxin that

24  went through the mail.  There was never a toxin at the

25  post office unbeknownst to the defendant.

1           So when the defendant got a notice that her

2    package had arrived in Pembina, she came to the border,

3    the U.S./Canadian border.  She identified herself under

4    her legitimate name with her car that is registered to

5    her as Sijie Liu, came through the port of entry, and at

6    the port of entry she stated to the people at the port

7    of entry that she was just going to go into North Dakota

8    to go shopping.  She didn't reveal that she was going in

9    to pick up any packages in Pembina, but she drove

10   directly to the Pembina mailbox, commercial mailbox

11   company.

12           She went in, identified herself as Julie

13   Chen and got the package, which she believed was a

14   toxin.  She also had several other packages that were

15   delivered both to her, and she also asked for any

16   packages in the name of Sijie Liu and she stated that

17   Sijie Liu was a friend of hers and she was there to pick

18   up her packages as well.  The sum total of these

19   packages included the package that she believed to be a

20   toxin as well as a number of high-grade respirators and

21   other equipment for handling dangerous toxins.

22           The defendant was encountered in -- after

23   she had left the commercial mailbox company.  The

24   materials she put in her vehicle.  The moment she was

25   encountered by law enforcement she almost immediately

1    stated:  I knew -- I know what I did was wrong.  And

2    they also stated to her that they were about to search

3    her vehicle and asked her if there was anything that

4    they should know about before they search her vehicle

5    and she stated:  Yes, there's a toxin.  There is

6    something that is painful; thereby admitting that she

7    knew what was in the box and also warning law

8    enforcement that if they encountered it that it could be

9    dangerous or deadly.

10           The investigation that occurred in Canada

11   revealed information that the defendant did have an

12   intended target for this poison, that she had written

13   substantially in journals about her planning ahead of

14   how that she was going to deliver the poison and had

15   even to some degree stalked and done surveillance on her

16   intended target or targets.

17           And, Your Honor, I think that the defendant

18   again from the get-go has -- again the toxin -- Your

19   Honor, I just want to establish that the toxin under

20   United States Code does qualify because of its makeup or

21   the intended toxin that was going to be delivered as a

22   weapon of mass destruction.  And again the place which

23   she picked these up we -- were in Pembina, North Dakota,

24   in this district, and the undercover persons with whom

25   she was communicating with to obtain these toxins were

1    in the United States.

2              THE COURT:  Mr. Chase, Count Two of the

3    Superseding Indictment indicates that this was a crime

4    that was committed between February 15th of 2019 and

5    March 5th of 2019.

6              I don't want to lose the forest for the

7    trees here.  That also is the time frame that is

8    contemplated in paragraph 6 of the Plea Agreement.

9    However, near the end of that paragraph it indicates

10   that on or about February 12th of 2019 she placed an

11   order for the toxin, an apron, a mask and gloves with a

12   shipping address in Pembina.

13             Is there any need to tighten up those dates?

14             MR. CHASE:  I don't see a reason to, Your

15   Honor.  If I'm -- I might be missing something I guess.

16             THE COURT:  Looks like the step to place the

17   order was made three days prior to the date of the

18   Information -- or of the --

19             MR. CHASE:  In the Indictment?

20             THE COURT:  In the Indictment.

21             MR. CHASE:  Right.  Because in the

22   Indictment it reads on or about what?

23             THE COURT:  February 15.

24             MR. CHASE:  Okay.  Your Honor, I think that

25   the "on or about" language covers the --

1           THE COURT:  Yeah.  If there are jury

2    instructions that's what it would say, too, so --

3           MR. CHASE:  I missed it immediately, Your

4    Honor.  It might have been a typo.  As I'm thinking

5    about it now, I don't know the reason for that.

6           THE COURT:  Mr. Reichert, I don't mean to

7    get too supercilious but would your client waive any

8    objection to that if there were an issue with the date?

9           MR. REICHERT:  Yes, Your Honor.

10           THE COURT:  Thank you.  Any comment on the

11    factual basis, Mr. Reichert?

12           MR. REICHERT:  No, Your Honor.  In speaking

13    with my client just now and listening to it, we believe

14    that it's accurate.

15           THE COURT:  Thank you.  It's the finding of

16    this Court that Ms. Liu is fully competent and capable

17    of entering an informed plea.  It's the finding of the

18    Court that Ms. Liu is aware of the nature of the charges

19    and the consequences of her plea.  It's the finding of

20    the Court that Ms. Liu's plea is a knowing and a

21    voluntary plea that is supported by an independent basis

22    in fact containing each of the essential elements of the

23    crime as charged.  I accept your plea and you're now

24    adjudged as guilty of that offense.

25           We'll now move on to the sentencing portion

1    of this hearing.  Counsel, I have the Presentence

2    Investigation Report that was prepared by Kera Helderop

3    of the United States Probation Office.  She is present

4    by interactive television.  The Presentence

5    Investigation Report is document No. 43 and was filed

6    one week ago today.  I note that there are no objections

7    from the United States that are set forth on the

8    addendum to the Presentence Investigation Report.

9              Does that remain the case, Mr. Chase?

10             MR. CHASE:  Yes, Your Honor.

11             THE COURT:  Thank you.  And I note that

12   there are none by the defendant as well, none submitted,

13   but I would certainly entertain any objections if you

14   had any, Mr. Reichert.

15             MR. REICHERT:  Your Honor, I would not couch

16   what I have as objections.  I would count them as

17   corrections.  Given the quick turnaround of this, when I

18   met with my client we didn't have time to give those to

19   the PSI writer.  I have communicated them to the United

20   States and to her.  I would lay them out briefly for the

21   Court and you'll see that they're not terribly

22   important, but just putting them on the record I think

23   is sufficient.  I don't think we need to correct the PSI

24   itself.

25             THE COURT:  Thank you.

1          MR. REICHERT:  The first one, Your Honor,

2    would be on the second page.  It says that she is a

3    Canadian National.  She is not.  She is a Canadian

4    citizen.  That is clarified however in paragraph 41.  So

5    while I think that might have been something important

6    enough to put in there, it is corrected at item 41 so I

7    don't see a need to formally correct that document.

8          Number -- at paragraph 6 it says that she

9    bought the protective equipment with cryptocurrency.

10   She actually bought it from Amazon with -- through the

11   regular credit card process but I think that makes

12   absolutely no difference.

13         At paragraph 8 she was apprehended within

14   inches of leaving the door of the facility, not in her

15   vehicle.  Again I don't think that that is necessary to

16   correct.

17         And then again at 9, searching the packages

18   in her vehicle, they weren't searched in her vehicle.

19   They were searched right outside of the facility.

20         So very minor, Your Honor, but I think

21   it's -- who knows how this will follow her.  If it

22   becomes important, we could go back to this record and

23   point that out.  Thank you, Your Honor.

24         THE COURT:  Thank you, Mr. Reichert.  Your

25   client is a Canadian citizen but she is a Chinese

1    National.

2              MR. REICHERT:  She is not.  She is a

3    Canadian citizen only.

4              THE COURT:  Thank you.

5              MR. REICHERT:  But she was born in China.

6              THE COURT:  Okay.

7              MR. REICHERT:  And was naturalized in

8    Canada.

9              THE COURT:  All right.  So on the

10   immigration status she is not a Chinese National.  I

11   will take note of that.

12             Mr. Chase, any comment to the clarifications

13   by Mr. Reichert?

14             MR. CHASE:  No, Your Honor.

15             THE COURT:  Thank you.  Ms. Liu, I think I

16   know the answers to these questions but I want to ask

17   them to make sure.

18             Have you had an opportunity, a sufficient

19   opportunity to review the Presentence Investigation

20   Report with Mr. Reichert?

21             THE DEFENDANT:  Yes, I have, Your Honor.

22             THE COURT:  I note, Ms. Liu, that you are

23   highly educated and so in light of that do you

24   understand the Presentence Investigation Report?

25             THE DEFENDANT:  I believe I do, Your Honor.

1          THE COURT:  Okay.  The Presentence

2    Investigation Report, Ms. Liu, is really gathered just

3    to give the Court information.  I am bound to impose a

4    sentence that is sufficient but not greater than

5    necessary to effectuate the purposes of the Sentencing

6    Reform Act of 1984.  In order to do that, I need

7    information and this is a very complete Presentence

8    Investigation Report.

9          Your counsel has been given an opportunity

10   to posit objections to that.  He has posited some useful

11   clarifications.  The United States has had no objections

12   or corrections.  As I indicated earlier, I'm accepting

13   the Plea Agreement as set forth.  And I realize that

14   both parties have put a tremendous amount of work into

15   this file, and I certainly want to effectuate both the

16   purposes of the Sentencing Reform Act and additionally I

17   wanted to reflect the work of the parties in getting a

18   resolution to this matter.

19         Ms. Liu, there's more to this file than the

20   Presentence Investigation Report, okay?  There are

21   several letters that I have received on your behalf.

22   They are filed with the District Court and I suspect

23   that Mr. Reichert has reviewed them with you.  They're

24   all filed under document No. 45 with the District Court

25   but they're also noted as 45-1, 45-2, 45-3 and 45-4.

1           Forty-five is a letter of support from

2    Chaplain Mike Sonju at Jail Chaplains; 45-1 is a letter

3    from Walton Li, from your husband, and it is a letter of

4    support of two pages.  Document 45-2 is a letter of

5    support from Adam Smith, your ex-husband, and it is a

6    well-written letter of support.  45-3 is a letter of

7    support from Chunwei Liu and Xianying Yang, your

8    parents, and it too is a very well-written letter of

9    support.  Document 45-4 is a letter of support that

10   gives great insight into your character.  It is written

11   by Eileen Chung and I'm certain, as I said, that you

12   have had an opportunity to review these.

13           Mr. Chase, your sentence recommendation.

14   And you sure may remain seated and just speak into the

15   microphone.

16           MR. CHASE:  Okay.  Your Honor, the United

17   States -- as reflected in the Plea Agreement, we are

18   recommending a period of six years, 72 months.  You

19   know, the -- this defendant is somebody who, you know,

20   is one of those defendants who never does anything wrong

21   and does everything right, is a high achiever until

22   something goes very, very badly for them in their life.

23   And there are just many people who under the very wrong

24   circumstances get to a very dark place in their life.

25           And that appears to be what has happened to

1   the defendant.  She got into a very dark place in her

2   life.  And, you know, I think it's human nature for

3   people to -- when they get into dark places in their

4   lives, and it happens to people, everybody, that you

5   have some idea, like some kind of revenge fantasy or

6   some kind of revenge thought.  Wouldn't it be great if

7   that person got run over by a bus or something?  I mean,

8   everybody's had those thoughts.

9          Looking at this case skeptically though is

10  that this went beyond a revenge sort of fantasy, even

11  writing about it in the journal.  This is somebody as

12  the Court noted is highly educated, highly trained

13  scientifically, went through scientific calculations in

14  terms of how this particular toxin would affect a person

15  just upon touch.  And it is a highly -- this particular

16  toxin ended up killing one of the leading experts who

17  studied this toxin just in -- obviously not through

18  carelessness but what that person felt was careful

19  treatment of it.  So this particular toxin's a highly

20  deadly toxin.  There were -- going onto the dark web,

21  again beyond the normal revenge fantasy that somebody

22  would have, you know, the -- all of the information in

23  the record about surveilling the intended subjects.

24          Now, you know, on the other hand none of us

25  knows whether or not in the end the defendant would have

1    followed through with this.  She did -- the thing that

2    always impresses me the most, and I say it every time it

3    happens, is that the moment that she is approached by

4    law enforcement she gave it all up.  I think that's

5    charitable, and maybe even a fair reading of that is

6    that this is not somebody who has a stomach for

7    following through with something.  At least that's

8    what -- I hope that that was the case.

9            And on the other hand we may have saved one

10   or two people's lives with law enforcement, what they

11   did in this case.  And none of us really will ever know

12   and maybe the defendant doesn't even know how far she

13   was prepared to go.  But she warned law enforcement that

14   there was going to be a toxin that they would run across

15   because she believed there was.  I also believe that

16   speaks well of her.  I think that is something that

17   is -- you know, to me it tells me that maybe she

18   wouldn't have followed through, maybe.  The fact that

19   she gave up everything showed me she didn't have a

20   determination or a hard stomach to commit a crime.

21           I think after that period, Your Honor, she

22   has met with law enforcement.  I know that the law

23   enforcement who are meeting with her started out very

24   skeptical of what her intentions were and I think, you

25   know, have come around in time thinking that she has met

1 with them in good faith and is somebody that they found
2 believing.

3          So she had all the makings of a crime here,
4 Your Honor, and she committed it to be sure.  You know,
5 the question is:  Was the defendant willing to go
6 through with killing somebody and -- which is really far
7 afield from going online and making up a fake name and
8 fantasizing about revenge and going through all the
9 super spy stuff of getting the materials on the dark
10 web.  Actually doing it was another thing and I -- none
11 of us again will ever know whether or not the defendant
12 was willing to do that.

13          The Plea Agreement is reflective of the
14 seriousness of this crime including, you know, all of
15 the steps for what could have been an attempted murder
16 in Canada on the Canadian side.  You know, at the same
17 time the defendant provided cooperation to law
18 enforcement.  She also provided what she believed was
19 lifesaving warning to law enforcement, again which at
20 the same time was an admission of her guilt without any
21 promise in return.  Just out of her own concern for
22 their safety.

23          Your Honor, I think the six-year
24 recommendation that the parties are -- is a fair, just,
25 no-more-than-necessary sentence that reflects the

1  seriousness of this crime, reflects both the seriousness

2  of the crime that this defendant committed and the --

3  sort of the other qualities that she has shown in her

4  life both before and after this crime.

5           Your Honor, so again our recommendation is

6  for the six years as reflected in the Plea Agreement.

7  Thank you.

8           THE COURT:  Mr. Chase, the Plea Agreement

9  reflects the six years.  I note that the Department of

10  Probation has indicated that no supervised release is

11  part of that.  Are you familiar with that?

12           MR. CHASE:  Yes, Your Honor.  I'm -- I am --

13  I shouldn't say -- we don't recommend any period of

14  supervised release.

15           THE COURT:  Yeah.  According to U.S.

16  Sentencing Guideline 5D1.1(c), the Court ordinarily

17  should not impose a term of supervised release in a case

18  in which supervised release is not required by statute

19  and the defendant is a deportable alien who likely will

20  be deported after imprisonment.

21           Are you recommending a fine?

22           MR. CHASE:  No, Your Honor, and mostly

23  because we'd have no way of collecting that fine.

24           THE COURT:  Oh, okay.  Mr. Reichert, before

25  you present your recommendation, I should nail it down

1  from both you and the United States.  I had done a

2  computation of a total offense level of 30.  Ms. Liu has

3  a Criminal History Category I with zero points.

4          Mr. Reichert, any objection to my

5  calculation there?

6          MR. REICHERT:  No, Your Honor.

7          THE COURT:  Thank you.  And, Mr. Chase, no

8  objection?

9          MR. CHASE:  No, Your Honor.

10          THE COURT:  Thank you.  Mr. Reichert, your

11  recommendation, please.

12          MR. REICHERT:  Thank you, Your Honor.  We

13  also would ask the Court to impose the agreed-upon

14  six-year sentence with no term of supervised release.

15  The amount of negotiation that has gone into this

16  spanned many, many months, lawyers in two jurisdictions,

17  prosecutions in two jurisdictions and I think it really

18  on balance is a really good Plea Agreement for all sides

19  that covers all of the (a) factors and all of the (e)

20  factors, Your Honor.  And so we would ask that the Court

21  do that.

22          Now we are going to ask for one other thing,

23  Your Honor, and that is something that the Court is

24  powerless to do but the Court -- I know that the BOP

25  does consider this.  So we are not able to initiate the

process of her transfer back to Canada until this --
until today, until this sentencing is complete.  And it
may take a period of time.  As soon as we get out of
here, I'm going to be contacting the BOP and the
marshals service in order to see if we can keep her from
being transferred to Oklahoma to the Federal Transfer
Center because it doesn't make any sense to take
somebody from here where they've got the COVID lockdown,
they know what's going on, transfer her to another
facility, and then at some point transfer her back to
Canada.

So I know the Court is allowed to make
recommendations about where somebody is to be placed and
that the BOP doesn't have to follow that.  What we would
just ask is that the Court recommend to the BOP that she
be left in Grand Forks -- or, I mean, in Fargo for as
long as possible before being transferred because we are
trying to effectuate this transfer to Canada and I think
for all parties involved, including the BOP, that makes
sense.  So we would ask for that recommendation and we
would also ask the Court to follow the Plea Agreement,
Your Honor.

There is only one other issue that my client
has asked that I bring up and I think is important, and
that is what Mr. Chase said about her alerting law

1    enforcement I think is telling but also the fact that a

2    ruse was required in order to get her to come down to

3    get the toxin.  She knew that the toxin had arrived.

4    She was wondering whether she should go down or not, and

5    they told her that the package had been damaged by a

6    water leak and in her mind people could be injured by

7    that and that is -- I'm not going to say the only reason

8    but that is certainly one of the reasons and the reason

9    that she came down so quickly after that.

10           But on balance, Your Honor, I think that

11   this is a well-reasoned Plea Agreement and we would ask

12   the Court to follow it.  Thank you.

13           THE COURT:  Thank you.  Mr. Reichert, if I

14   were to make the recommendation that she be -- that she

15   remain in Cass County as long as possible in order to

16   facilitate her transfer to Canada, would that be

17   satisfactory?

18           MR. REICHERT:  That would be, Your Honor,

19   and I would appreciate that.  Thank you.

20           THE COURT:  You're welcome.

21           Anything further from the United States?

22           MR. CHASE:  No, Your Honor.

23           THE COURT:  Before I turn to your client for

24   an allocution, Mr. Reichert, anything further from the

25   defense?

1          MR. REICHERT:  No, Your Honor.  Thank you.

2          THE COURT:  Ms. Liu -- actually one more

3     thing.

4          Ms. Helderop, you've heard the statements of

5     counsel for both sides.  Do you have anything to add in

6     this matter?

7          MS. HELDEROP:  Nothing further.  Thank you.

8          THE COURT:  Thank you.

9          All right, Ms. Liu, I wanted to clear off

10    the table there so that -- so you understand that it's

11    now yours.  This is an opportunity for you to make an

12    allocution.  I will note that in the Presentence

13    Investigation Report that you had foregone the

14    opportunity upon the advice of counsel to discuss the

15    instant offense and you indicated that a statement would

16    be provided and your statement is noted on document

17    No. 43, the Presentence Investigation Report, on pages 5

18    and 6 of 15.

19         So I have that statement from you and I have

20    considered that.  If you have anything further that

21    you'd like to add, I would certainly be wanting to hear

22    that.  But I also don't want you to feel like you have

23    to say anymore, okay?  So it's up to you.

24         THE DEFENDANT:  I just want to apologize,

25    Your Honor.  I'm so, so sorry about everything.  I don't

1  know what I was thinking and I've been regretting it

2  every single day.  I feel so much pain and shame in my

3  heart I can't even begin to explain or express how sorry

4  I am.  I just ask you to please give me a chance to

5  prove to you that this is not me.  This is not who I am.

6  Please give me a chance to make positive changes in my

7  life and make amends to my family.

8           THE COURT:  Thank you, Ms. Liu.

9           There's a motion before the Court pursuant

10 to 5K1.1 and 18 U.S. Code 3553(e).  That motion is the

11 government's motion and joined by the defendant.  I

12 grant that motion.  I also will grant the motion of the

13 United States to dismiss Counts One and Three as soon as

14 that motion is made.

15          MR. CHASE:  So moved, Your Honor.

16          THE COURT:  And no objection from you,

17 Mr. Reichert?

18          MR. REICHERT:  No, Your Honor.

19          THE COURT:  Thank you.  So Counts One and

20 Three are dismissed.

21          Ms. Liu, this is one of the most interesting

22 cases that I've had.  And you are highly educated.  You

23 are bright.  You're articulate.  You're only 37 years

24 old.  You've had quite a life up to this point, and the

25 Court is pleased that after justice is administered in

1    this case that it appears that you'll have a chance to

2    resume that life in Canada thanks to your efforts and

3    the efforts of counsel.

4         You have a Master's degree.  You have a

5    tremendous mind.  I can tell you the -- there's an old

6    adage that there is strength in numbers.  I can tell you

7    that sometimes that adage isn't true.  You have five

8    letters of support here.  That might not be a tremendous

9    number but the substance of these letters is striking.

10   You have some people who care about you an awful lot and

11   these are the people that know you and so that ought to

12   be heartening.

13        Additionally, Ms. Liu, what you did was a

14   very serious crime and it could have resulted in people

15   being seriously hurt.  That is something that the Court

16   views with an appropriate amount of scrutiny.  I think

17   that the Plea Agreement does reflect a sentence that is

18   sufficient but not greater than necessary to effectuate

19   the purposes of the Sentencing Reform Act.

20        Before I impose sentence though I want you

21   to understand that although this is very serious that it

22   doesn't have to define you.  You're still very young and

23   you have a lot of life ahead of you.  You've got

24   somewhere around 15 months in custody already so my hope

25   is that when you are done with this that you get back

1  onto the trajectory of life that you had prior to this

2  matter.

3            I must impose a sentence, Ms. Liu,

4  sufficient but not greater than necessary to comply with

5  the purposes provided in 18 U.S. Code 3553(a).  I've

6  considered all of the sentencing factors in this matter.

7  I've considered the statements of Mr. Chase, the

8  statements of Mr. Reichert, your statement.  I hereby

9  adopt the Presentence Investigation Report and all the

10 facts and information herein.  Pursuant to the Rules of

11 Criminal Procedure, I do so without objection from

12 either the government or the defense.

13           I've considered the entire file in this

14 matter and pursuant to the Sentencing Reform Act of 1984

15 it's the judgment of this Court, Ms. Liu, that you shall

16 be committed to the custody of the Bureau of Prisons for

17 72 months.  Following that term of imprisonment, you

18 shall not be on supervised release.  I will take note of

19 United States Sentencing Guideline Section 5D1.1(c) in

20 not imposing that term of supervised release.  I will

21 not impose a fine in this matter.  I will impose the

22 $100 special assessment.

23           Ms. Liu, I'm going to make recommendations

24 and the recommendation that I'm going to make is that

25 you be placed in Cass County and remain in Cass County

1  as long as possible in order to facilitate your physical

2  transfer to Canada pursuant to the Plea Agreement and

3  the Plea Agreement Supplement that were filed as

4  document Nos. 38 and 39 respectively in this case.

5          Even though you have waived your right to

6  appeal, Ms. Liu, you do have a couple of very narrow

7  windows to appeal pursuant to the Plea Agreement, and if

8  you decide to attempt to exercise that you have 14 days.

9  So that would be 14 days from today, okay?  Mr. Reichert

10  as I indicated is very experienced.  He can certainly

11  advise you well on that.

12          Anything else from the United States,

13  Mr. Chase?

14          MR. CHASE:  No, Your Honor.

15          THE COURT:  From the defense?

16          MR. REICHERT:  No, Your Honor.

17          THE COURT:  Ms. Liu, good luck to you.

18          THE DEFENDANT:  Thank you, Your Honor.

19          THE COURT:  Thank you.  We are adjourned.

20          (Adjourned at 12:15 p.m.)

21

22

23

24

25

**CERTIFICATE OF REPORTER**

1

2              I, Kelly A. Kroke, a duly appointed

3  Registered Professional Reporter;

4              DO HEREBY CERTIFY that I reported in

5  shorthand the foregoing proceedings had and made a

6  record at the time and place indicated.

7              I DO HEREBY FURTHER CERTIFY that the

8  foregoing and attached (49) typewritten pages contain an

9  accurate transcript of my shorthand notes then and there

10  taken.

11              Dated this 18th day of February, 2022.

12

13

14

15

16

17              /s/ Kelly A. Kroke
                KELLY A. KROKE - RPR, RMR
18              United States District Court Reporter
                District of North Dakota
19              Eastern Division

20

21

22

23

24

25