UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:19-CR-00042-PDW-1 |
| | ) | |
| SIJIE LIU, | ) | |
| | ) | |
| Defendant. | ) | |

**MOTION FOR REDUCTION OF SENTENCE PURSUANT
TO 18 U.S.C. § 3582(c)(1)(A)**

Sijie Liu ("Liu"), by and through the undersigned counsel, respectfully submits this Motion for Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A).

**I. RELEVANT FACTS**

On March 5, 2019, Liu was arrested in the District of North Dakota. A complaint was filed on March 6, 2019, charging Liu with Making False Statements under 18 U.S.C. § 1001. (Docket Entry "DE" 1).

On April 17, 2019, a Superseding Indictment was returned which added violations of Attempt to Acquire a Chemical Weapon under 18 U.S.C. §§ 229(a)(1) and (2), 229A(a)(1); and Use of a Fictitious address under 18 U.S.C. § 1342

Liu agreed to plead guilty to one count of Attempt to Acquire a Chemical Weapon. Pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the parties stipulated to a sentence of 72 months imprisonment. The parties also

1

agreed that the government would not oppose Liu's request for a "Treaty Transfer." (DE 55 at 18, line 3).

A Presentence Investigation Report ("PSR") was drafted in preparation for the combined change of plea and sentencing hearing. (DE 43). The PSR indicated that Liu's mother and father were 65 years of age at the time of the report. *Id*. at 8. The PSR reflected that Liu's father remained a Chinese citizen and that Liu's mother is a Chinese National with Canadian citizenship. *Id*. Liu's mother and father reside in China for part of the year, and they live with Liu in Canada the other part of the year. *Id*.

Liu's combined plea and sentencing hearing were held on June 22, 2020. (DE 55). The parties discussed the agreement concerning the treaty transfer, indicating that the government agreed to the terms and it was not something that the government normally agrees to. (DE 55 at 25, lines 12-14).

The Court's computation of the total offense level was a level 30. Liu was found to have no criminal history points for a Criminal History Category of I. *Id*. at 42, lines 1-3. The Court accepted the plea and sentenced Liu to 72 months. *Id*. at 48, lines 13-17. The Court recommended that Liu be placed in Cass County and remain in Cass County as long as possible to "facilitate [Liu's] physical transfer to Canada." *Id*. at 49-50.

Sijie Liu is incarcerated at Waseca Federal Institution. The Bureau of Prisons reports her release date as April 13, 2024. *See* Bureau of Prisons Federal Inmate Locator, *Available At* https://www.bop.gov/inmateloc/



**SIJIE LIU**

Register Number: 17258-059

Age:   39
Race:  Asian
Sex:   Female

Located at: Waseca FCI

Release Date: 04/13/2024

## II. APPLICABLE LAW

In December 2018, Congress enacted the First Step Act ("FSA") which modified Section 3582(c)(1) of Title 18 of the United States Code to allow a defendant to bring a motion for modification of sentence where "extraordinary and compelling reasons warrant such a reduction[.]" 18 U.S.C. § 3582(c)(1)(A)(i). Section 3582(c) now reads:

> (c) Modification of an Imposed Term of Imprisonment. –The court may not modify a term of imprisonment once it has been imposed except that—
>
> > (A) the court, upon motion of the Director of the Bureau of Prisons, *or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier,* may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it find that—

3

> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
>> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission;

18 U.S.C. § 3582(c)(1)(A) (emphasis added).

If the Court finds the exhaustion requirements met and extraordinary and compelling circumstances are present, the Court may reduce a term of imprisonment "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Further, the statute requires the Court "to consider the factors set forth in [18 U.S.C. §] 3553(a) to the extent they are applicable." *Id.*

A.   *Exhaustion Requirement*

Although there has been a significant split among district courts on whether the exhaustion requirement of § 3582(c)(1)(A) is jurisdictional and/or excusable, two Courts of Appeals have recently weighed in on the subject. In *United States v. Raia*, the Third Circuit concluded that failure to comply with the statute's exhaustion requirement "presents a glaring roadblock foreclosing compassionate release[.]" *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

More recently, the Sixth Circuit found that a prisoner's failure to exhaust his administrative remedies did not deprive the court of subject-matter jurisdiction; however, the court concluded that the exhaustion requirement "looks like a claim-processing rule, and in operation it acts like one." *United States v. Alam*, 960 F.3d 831 (6th Cir. 2020). In so holding, the court noted:

> Even though this exhaustion requirement does not implicate our subject-matter jurisdiction, it remains a mandatory condition. If the Director of the Bureau of Prisons does not move for compassionate release, a prisoner may take his claim to court only be moving for it on his own behalf. To do that, he must "fully exhaust [] all administrative rights to appeal" with the prison or wait 30 days after his first request to the prison. 18 U.S.C. § 3582(c)(1)(A).

*Id*. At 833.

B.   *Extraordinary and Compelling Circumstances*

As many district courts have noted post-First Step Act, "Congress has not specified the circumstances that qualify as 'extraordinary and compelling reasons' except to state that a reduction pursuant to this provision must be 'consistent with applicable policy statements issued by the Sentencing Commission." *United States v. Bucci*, No. CR 04-10194-WGY, 2019 WL 5075964, at *1 (D. Mass. Sept. 16, 2019). The applicable policy statement of the Sentencing Commission can be found at U.S.S.G. § 1B1.13, which its commentary states:

> 1. Extraordinary and Compelling Reasons. –Provided the defendant meets the requirements of subdivision (2) [not a danger to society], extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
>> (A) Medical Condition of the Defendant. –
>>
>>> (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death

> within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is—
>
> > (I) suffering from a serious physical or medical condition,
> >
> > (II) suffering from a serious functional or cognitive impairment, or
> >
> > (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of the Defendant. –The defendant (i) is at least 65 years old; (ii) is experiencing serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (c) Family Circumstances. –
>
> > (i) The death or incapacitation of a caregiver of the defendant's minor child or minor children.
> >
> > (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (D) Other Reasons. –As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13.

Since the enactment of the First Step Act, district courts across the country have found and given various meanings to the term "extraordinary and compelling." *See, e.g.*, *United States v. Ebbers*, No. S402CR11443VEC, 2020 WL 91399 (S.D.N.Y.

Jan. 8, 2020) ("The rapid decline [in health] coupled with Ebbers's age present 'extraordinary and compelling reasons'"); *United States v. Urkevich*, No. 8:03CR37, 2019 WL 6037391 (D. Neb. Nov. 14, 2019) (concluding that the stacking provision of 18 § 924(c) constitutes extraordinary and compelling reason for reduction in sentence after the First Step Act); and *United States v. Beck,* No. 1:13-CR-186-6, 2019 WL 2716505 (M.D.N.C. June 28, 2019) ("Ms. Beck's invasive cancer and the abysmal health care BoP has provided qualify as 'extraordinary and compelling reasons' warranting a reduction in her sentence to time served.").

Recently, several of the U.S. Courts of Appeals have been asked to determine whether district courts remain bound to slavishly adhere to the old policy statement on compassionate release which has not been updated since the passage of the First Step Act of 2018. Almost Every court to squarely decide the issue so far has determined that U.S.S.G. § 1B1.13 is no longer binding or an "applicable policy statement[]" to sentence reduction motions brought by a defendant. *United States v. McCoy*, 981 F.3d 271, 281 (4th Cir. 2020) (policy statement not applicable and courts have discretion to determine if extraordinary and compelling reasons exist); *United States v. Zullo*, 976 F.3d 228, 230 (2nd Cir. 2020) (policy statement not applicable to motions brought by defendant); *United States v. Shkambi*, 993 F.3d 388 (5th Cir. 2021) ("that neither the policy statement nor the commentary to it binds a district court addressing a prisoner's own motion under § 3582. The district court on remand is bound only by § 3582(c)(1)(A)(i) and, as always, the sentencing factors in § 3553(a)"); *United States v. Jones*, 980 F.3d 1098 (6th Cir. 2020) (same);

*United States v. Gunn*, 980 F.3d 1178, (7th Cir. 2020) ("Any decision is 'consistent with' a nonexistent policy statement."); *United States v. McGee*, 992 F.3d 1035, 1050 (10th Cir. 2021) ("We conclude instead, as have the Second, Fourth, Sixth, and Seventh Circuits, that the Sentencing Commission's existing policy statement is applicable only to motions for sentence reductions filed by the Director of the BOP, and not to motions filed directly by defendants."), *but see United States v. Bryant*, 996 F.3d 1243 (11th Cir. 2021) (finding United States Sentencing Guideline 1B1.13 to be an applicable policy statement to compassionate release motions filed by defendants).

The Eighth Circuit has not squarely decided the issue of whether U.S.S.G. § 1B1.13 is binding on district courts post First-Step Act.  *See United States v. Rodd*, 966 F.3d 740, 747 (8th Cir. 2020) ("We need not determine whether the district court erred in adhering to the policy statements in § 1B1.13").  The Eighth Circuit has however determined that "stacked" 924(c) sentences are not extraordinary and compelling.  *United States v. Crandall*, 25 F.4th 582, 585–86 (8th Cir. 2022) ("We find ourselves in agreement with the latter set of decisions. Congress opted in 2018 to assign a new, less substantial, mandatory punishment for multiple violations of § 924(c) going forward, but it did not declare that the previous Congress—decades earlier—prescribed an inappropriate punishment under the circumstances that confronted that legislative body.")

C.  *Sentencing Commission Policy and 18 U.S.C. § 3553(a) and* 18 U.S.C. § 3142(g). *Factors*

Section 3582(c)(1)(A) allows for a court to reduce a term of imprisonment "after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that– (i) extraordinary and compelling reasons warrant such a reduction; … and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]"

The § 3553(a) "factors include, among other things [:]

'(1) the nature and circumstances of the offense and the history and characteristics of the defendant,' as well as

'(2) the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct; [and]

(C) to protect the public from further crimes of the defendant.'"

*United States v. Rodriguez-Orejuela*, No. 03-CR-20774, 2020 WL 2050434, at *4 (S.D. Fla. Apr. 28, 2020) (quoting 18 U.S.C. § 3553(a)).

More specifically, the Sentencing Guidelines policy statement also limits the capacity for compassionate release only if the defendant "is not a danger to the safety of any other person or the community, as provided in 18 U.S.C. §3142(g)." U.S.S.G. § 1B1.13(2). Factors to be considered in making such public safety determinations are:

(1) The nature and circumstances of the offenses of conviction, including whether the offense is a crime of violence, or involves a minor victim, a controlled substance, or a firearm, explosive, or destructive device;

(2) The weight of the evidence;

(3) The defendant's history and characteristics; and

(4) The nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.

18 U.S.C. § 3142(g).

### III. A REDUCTION IN SENTENCE UNDER 18 U.S.C. § 3582(c)(1)(A)(i) IS WARRANTED

A. *Liu Has Met the Exhaustion Requirements of § 3582(c)(1)(A)*

Liu, through counsel, submitted a request for Compassionate Release/Reduction in Sentence pursuant to Bureau of Prisons ("BOP") Program Statement 5050.50 to the Warden of Waseca FCI on January 28, 2022[1]. The Warden denied this request on February 1, 2022[2]. As such, Liu has fulfilled the exhaustion requirement of 18 U.S.C. § 3582(c)(1)(A).

B. *Extraordinary and Compelling Circumstances Justify a Reduction in Sentence*

As discussed above, district courts across the country have given various meanings to the term "extraordinary and compelling" circumstances. Under the commentary to U.S.S.G. § 1B1.13, extraordinary and compelling reasons may

---

[1] See Exhibit A.
[2] *Id.* Note that the warden's response does not reference Liu's request for release due to the failure to grant a treaty transfer.

include: (A) medical conditions of the defendant; (B) age of the defendant; (C) family circumstances; or (D) other reasons. U.S.S.G. § 1B1.13, cmt. n. 1. "Other reasons" is further defined by the Guidelines as follows:

> (D) Other Reasons. –As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

*Id*. As several courts have noted:

> § 1B1.13, as currently written, would not constrain this Court's ability to find extraordinary and compelling reasons here. As the Sentencing Commission's policy statement was not amended after enactment of the FSA "a growing number of district courts have concluded the Commission lacks an applicable policy statement regarding when a judge can grant compassionate release" … "because the Commission never harmonized its policy statement with the FSA." *United States v. Mondaca*, 2020 WL 102024, at *3 (S.D. Cal. Mar. 3, 2020); (citing *Brown*, 411 F. Supp. 3d at 477, 499 (canvassing district court decisions)); *see also United States v. Redd*, 2020 WL 1248493, at *6 (E.D. Va. Mar. 16, 2020) ("[T]here does not currently exist, for the purpose of satisfying the ["FSA's"] 'consistency' requirement, an 'applicable policy statement.'")
>
> This Court is persuaded by the reasoning of numerous other district courts and holds that it is 'not constrained by the BOP Director's determination of what constitutes extraordinary and compelling reasons for a sentence reduction." *United States v. Young*, 2020 WL 1047815, at *6 (M.D. Tenn. Mar. 4, 2020); *See also United States v. Perez*, 2020 WL 1180719, at *2 (D. Kan. Mar. 11, 2020) ("[A] majority of federal courts have found that the most natural reading of the amended § 3582(c) and § 994(t) is that the district court assumes the same discretion as the BOP director when it considers a compassionate release motion properly before it.")

*United States v. Etzel*, No. 6:17-CR-00001-AA, 2020 WL 2096423, at *3 (D. Or. May 1, 2020). Accordingly, this Court may find "extraordinary and compelling" reasons under U.S.S.G. § 1B1.13, cmt. n. 1(D).

1.  *Liu's Need to Provide Assistance to her Parents*

The extraordinary and compelling circumstances presented in the instant case relate to Liu's need to return to Canada and provide support to her parents.

As indicated in the presentence investigation report, Liu's parents are both over 65 years of age currently. Liu's mother has developed high cholesterol over the past few years[3], increasing her risk of stroke[4]. Liu's mother self-reports symptoms of hereditary hypertension, atherosclerosis with hyperlipidemia, as well as coronary heart disease, chronic cholecystitis, waist and leg pain, poor sleep, expectoration, sore throat, fatigue, abnormal sense of smell, abnormal taste, abnormal hearing, and other diseases[5]. She also self-reports pain and dizziness after a fall in Winnipeg[6]. Liu's mother speaks Mandarin Chinese and Liu reports that no doctors in the area where she previously lived speak Mandarin Chinese.

Likewise, Liu's father has a primary diagnosis of Hypertension and hyperlipidemia and also reports back and leg pain, "insomnia, poor sleep, and no

---

[3]   *See* Sealed Exhibit B (filed contemporaneously with a motion to seal).

[4]   "With high cholesterol, you can develop fatty deposits in your blood vessels. Eventually, these deposits grow, making it difficult for enough blood to flow through your arteries. Sometimes, those deposits can break suddenly and form a clot that causes a heart attack or stroke."
High Cholesterol, Mayo Clinic, *Available At* https://www.mayoclinic.org/diseases-conditions/high-blood-cholesterol/symptoms-causes/syc-20350800 (last accessed May 17, 2022)

[5]   *See* Exhibit D

[6]   *Id.*

12

fever, dry cough, expectoration, sore throat, weakness, diarrhea and abnormal smell and taste[7]." Liu's father is in Canada currently and, Liu will be his primary caregiver upon her return.

As Liu lived with her mother before incarceration and was the only available person to speak Mandarin Chinese to her mother, coordinated her doctor's appointments and facilitated communication between her mother and her mother's medical professionals, Liu is the "only available caregiver" for her mother.  See United States Sentencing Guideline § 1B1.13 n.1(C)(ii) see also *United States v. Bucci*, 409 F. Supp. 3d 1, 2 (D. Mass. 2019).  ("When a defendant is the "only available caregiver" for an incapacitated parent (perhaps a more unique occurrence given that inmates may have siblings or other family members able to care for their parents), then, it is likewise an "extraordinary and compelling" reason warranting compassionate release.")

   2. *The Failure to Grant a Treaty Transfer*

Federal law and regulations provide that the Bureau of Prisons can transfer offenders from the United States to their country of origin under certain circumstances.  *See* 18 U.S. Code § 4100.  This is referred to as a "treaty transfer."  *Id*.  *See also* 28 CFR 527.40, Bureau of Prisons Program Statement 5150.42.  The applicable regulation says the following:

> The Director of the Bureau of Prisons and officers of the Bureau of Prisons designated by him are authorized to receive custody of offenders and to transfer offenders to and from the United States of America under a treaty as referred to in Public Law 95-144; to make

---

[7] *See* Sealed Exhibit B.

arrangements with the States and to receive offenders from the States for transfer to a foreign country; to act as an agent of the United States to receive the delivery from a foreign government of any person being transferred to the United States under such a treaty; to render to foreign countries and to receive from them certifications and reports required under a treaty; and to receive custody and carry out the sentence of imprisonment of such a transferred offender as required by that statute and any such treaty.

*Id*. Canada, where Liu is a naturalized citizen, has a bilateral treaty with the United States regarding the transfer of prisoners[8].

During sentencing the parties understood that Liu would seek a transfer to Canadian Custody and that the United States would not oppose that request. (DE 55 at 17, lines 1-3, 23, lines 12-14, 25 at lines 9-12, 43 at lines, 1, 10-11, 17-18, 44, line 16).

Liu reports that she sought a treaty transfer both on the American side and the Canadian side[9]. She reports that she was denied by the United States Department of Justice[10] . While Liu understands that the Bureau of Prisons is separate from the United States Attorneys' Office, she argues that it is a distinction without a difference as both the Bureau of Prisons and the United States Attorney's Office are both functions of the Department of Justice with the ability to consult each other and confer on the specifics of this case.

---

[8]  *See* Department of Justice, List of Participating Countries/Governments, *Available At* https://www.justice.gov/criminal-oia/list-participating-countriesgovernments (last accessed May 18, 2022)
[9]  *See* Exhibit B
[10]  *See* Exhibit C

14

Liu submits that the denial of a treaty transfer after the understanding that the parties had at sentencing serves as extraordinary and compelling circumstances. While there are no direct cases on point in the circuit, Liu submits that the sentencing transcript clearly paints a tale that all parties understood the need to engage in a treaty transfer and that its success was likely. Liu asks that the court find that extraordinary and compelling reasons exist in this case.

C. *A Reduction in Sentence is Warranted After Consideration of the 18 U.S.C. § 3553(a) Factors, 18 U.S.C. §3142(g) Factors, and Sentencing Guidelines' Policy*

Having established that Liu has met the exhaustion requirements of the statute, and that extraordinary and compelling circumstances exist, the Court must consider the factors under 18 U.S.C. § 3553(a), 18 U.S.C. §3142(g), and the Sentencing Guidelines policy to determine whether a reduction in sentence is warranted. Based on the following, Liu respectfully submits that these factors support a reduction of sentence.

With respect to 18 U.S.C. § 3142(g)(1), Liu has demonstrated substantial evidence of rehabilitation during her time in prison, significantly decreasing the likelihood of recidivism upon release. Liu fully recognizes the severity of the crime to which she was convicted of. Throughout her term of imprisonment, Liu has been a model inmate, dedicated to proving her rehabilitation. Importantly, evidence of post-sentence rehabilitation is likely the most critical of core considerations for the Court in a § 3582(c) proceeding. In *Pepper v. United States*, 131 S.Ct. 1229, 1241 (2011), the Court emphasized the important nature of post-sentence rehabilitation,

stating that "there would seem to be no better evidence than a defendant's post incarceration conduct."[11] *Id*. Indeed, the Court continued, "Post sentencing rehabilitation may also critically inform a sentencing judge's overarching duty under § 3553(a) to 'impose a sentence sufficient, but not greater than necessary' to comply with the sentencing purposes set forth in § 3553(a)(2)." *Id*. at 1242.

Looking to the history and characteristics of the defendant, 18 U.S.C. § 3553(a)(1) and 18 U.S.C. §3142(g)(3), Liu has maintained excellent conduct since incarceration and has contributed extreme efforts towards her own rehabilitation. Liu has used her time productively by taking numerous BOP programming courses in cosmetology and health and wellness. Liu has also taken courses through the American Bible Academy and the School for Evangelism and Discipleship[12].

Lastly, Liu submits that she is not a danger to the safety of others. U.S.S.G. § 1B1.13(2) and 18 U.S.C. §3142(g)(4). Liu has dedicated herself to preparation for

---

[11] "In addition, evidence of post sentencing rehabilitation may be highly relevant to several of the § 3553(a) factors that Congress has expressly instructed district courts to consider at sentencing. For example, evidence of post sentencing rehabilitation may plainly be relevant to 'the history and characteristics of the defendant.' § 3553(a)(1). Such evidence may also be pertinent to 'the need for the sentence imposed' to serve the general purposes of sentencing set forth in § 3553(a)(2) – in particular, to 'afford adequate deterrence to criminal conduct,' 'protect the public from further crimes of the defendant,' and 'provide the defendant with needed educational or vocational training…or other correctional treatment in the most effective manner.' §§ 3553(a)(2)(B)-(D); see *McMannus*, 496 F.3d, at 853 (Melloy, J., concurring) ("In assessing…deterrence, protection of the public, and rehabilitation, 18 U.S.C. § 3553(a)(2)(B)(C) & (D), there would seem to be no better evidence than a defendant's post incarceration conduct"). *Pepper*, 131 S.Ct. at 1242.

[12] See Exhibit E and F. Note that Liu also has contracted and recovered from COVID-19. *See* Sealed Exhibit A at 14, 18, and 55.

16

release and personal rehabilitation. She has numerous letters of support from family members outlining her strength of character as well as outlining the community network that is committed to helping Liu transition successfully out of incarceration[13]. Liu also has a verifiable release plan that incorporates the love and support of this family. She will live with her family in Canada. She has ample support from his family and will have access to medical care.

Taking into account Liu's significant post-sentencing rehabilitation efforts and the substantial risks of continued incarceration, Liu respectfully submits that a reduction under § 3582(c)(1)(A) to a sentence of time served is "sufficient, but not greater than necessary" to comply with the sentencing purposes set forth in § 3553(a).

## IV. CONCLUSION

Based on the foregoing, Liu prays that the Court grant her motion under 18 U.S.C. § 3582(c)(1)(A) and reduce her term of imprisonment to time served.

Respectfully submitted,

/s/ Jeremy Gordon
Jeremy Gordon
Jeremy Gordon, PLLC
1848 Lone Star Road, Suite 106
Mansfield, TX 76063
Tel: 972-483-4865
Fax: 972-584-9230
Email: Jeremy@gordondefense.com
TX Bar No. 24049810

*Counsel for Sijie Liu*

---

[13] *See* Exhibit G.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was duly served on all counsel of record via the Court's CM/ECF system this 15th day of June 2022.


/s/ Jeremy Gordon