UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:19-CR-00042-PDW-1 |
| | ) | |
| SIJIE LIU, | ) | |
| | ) | |
| Defendant. | ) | |

**REPLY TO GOVERNMENT'S RESPONSE FOR MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582**

Sijie Liu ("Liu"), by and through the undersigned counsel, respectfully submits this Reply Brief for Her Motion for Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A).

On June 15, 2022, Liu filed her Motion for Reduction of Sentence. Docket Entry ("DE") 56. The Government filed a response to the Motion for Reduction of Sentence on July 12, 2022. DE 67. The Court granted Liu's Unopposed Motion for Leave to File a Reply on August 16, 2022. DE 69.

This Reply follows.

    I.    <u>Liu has Experienced Extraordinary and Compelling Circumstances.</u>

Liu has averred that a compassionate release is appropriate here. As part of her motion, she asserts that she has experienced extraordinary and compelling circumstances. As relevant here, Liu states that she entered into a plea agreement with the government where the government would not oppose a "Treaty Transfer"

1

back to Canada[1]. DE 38 at 8.  This was covered in the plea agreement and the combined change of plea and sentencing hearing. *Id*.  *See also* DE 55 at 23.  Liu, through counsel, even received a non-binding recommendation to keep her close to North Dakota (as opposed to being sent through the Oklahoma City Transfer Center) to facilitate the treaty transfer. *Id*.  At. 42-44, 48-49.

Once Liu sought the Treaty Transfer, she was denied by the Department of Justice International Prisoner Transfer Unit ("IPTU"). DE 66-1.  The government's response indicates that because the IPTU denied the Transfer and not the United States Attorney's office, that means the United States did not oppose the matter. DE 67 at 5.

However, the rejection by the IPTU marks the first time that such an agency has ever been heard of in this matter. The IPTU was not mentioned in the plea agreement and not mentioned in change of plea or sentencing hearing. The parties know and are very capable of discussing non-binding matters on the record in this case such as the discretionary nature of Liu's placement.   Indeed, the parties asked for and received a non-binding recommendation for Liu to be housed in the Cass County Detention Center.  DE 55 at 42-43, 48-49.

The parties did not bring up the existence of the IPTU at any time during the plea and sentencing hearing. The prosecutor stated at the plea and sentencing hearing that the government has never agreed not to oppose a treaty Transfer. DE

---

[1] Liu stands on section III(B)(1) of her motion where she discussed that her need to assist her parents in their time of medical need constituted extraordinary and compelling circumstances.

55 at 23. But there is no indication that the prosecutor understood the existence of the IPTU or knew their potential impact in Liu's incarceration. At best, they did not know the impact of the IPTU and agreed without understanding the impact[2].

The idea of the government not knowing that the IPTU has final authority over whether Liu would be sent back to Canada belies their knowledge of their own department. As the government indicated in their response, the IPTU is a function of the Attorney General's office. *See* 18 U.S.C. § 4102(3) *et seq.* (authorizing the Attorney General "to transfer offenders under a sentence of imprisonment, on parole, or on probation to the foreign countries of which they are citizens or nationals"), but the United States Attorney's Office a function of the Attorney General as part of the Executive Office of United States Attorneys[3].

This impacts the compassionate release analysis. The government agreed not to oppose Liu's Treaty Transfer, making this, by their own words, the first time that they have agreed to such. The government put the same in their plea agreement, which Liu accepted as a joint resolution to both the investigation and prosecution of the case in both the United States and Canada. The parties engaged in a joint plea and sentencing hearing where it was placed on the record that the United States indicated that they will not oppose a Treaty Transfer. The parties

---

[2] Any assertion that Liu could file a 2255 against her former counsel at this point rings hollow as the statute of limitations to file a 2255 has passed.
[3] *See* Organization, Mission and Functions Manual: Executive Office for United States Attorneys, *Available at* https://www.justice.gov/jmd/organization-mission-and-functions-manual-executive-office-united-states-attorneys (last accessed August 19, 2022)

3

engaged in this hearing without explaining the impact of the ITPU on the decision to the court. The court accepted the plea and sentenced Liu with the recommendation that she stay as close as possible and not be processed through the Oklahoma City Federal Transfer Center. Then, months later, Liu was informed that the Treaty Transfer that she was seeking was denied. This is a strong example of extraordinary and compelling reasons. Liu asks that the court find extraordinary and compelling reasons exist here.

## II.   The Sentencing Factors in 18 U.S.C. § 3553(a) Should be Applied Favorably to Liu

The government indicates that the factors in § 3553(a) do not warrant release for Liu. DE 67 at 11-13.  Of note is that the government indicates that Liu could be a danger to another person under similar circumstances. DE 67 at 13.

Key to this case and this inquiry are the nature and circumstances of the offense.  18 U.S.C. § 3553(a)(1).  This was a particularized crime against a specific person for a reason of passion. This is not a generalized crime against the community such as a drug conspiracy or a set of robberies. The facts surrounding this case are so unique that Liu suggests that their likelihood of reoccurrence is slim to none.

The prosecution's counterparts in the Bureau of Prisons betray them.  Liu is currently housed at FCI Waseca, a Low Security Prison[4]. Liu's presence in a low

---

4   See Bureau of Prisons, Inmate Locator, *Available at* https://www.bop.gov/inmateloc/ (last accessed August 19, 2022).

4

security prison coupled with her low PATTERN Recidivism Risk Score contradict the government's assertion that she is a danger. Further, the government is not without options. If they find it appropriate, they can engage in removal proceedings and deny Liu reentry to the United States to further protect the American public. See 8 U.S.C. § 1228 (providing that the Attorney General shall provide for removal proceedings for persons who commit aggravated felonies as that term is defined in the United States Code).  Or to put it another way:

> You know, the – this defendant is somebody who, you know, is one of those defendants who never does anything wrong and does everything right, is a high achiever until something goes very, very badly for them in their life. And there are just many people who under the very wrong circumstances get to a very dark place in their life… She did – the thing that always impresses me the most, and I say it every time it happens, is that the moment that she is approached by law enforcement she gave it all up. I think that's charitable, and maybe even a fair reading of that is that this is not somebody who has a stomach for following through with something. At least that's what – I hope that that was the case.

DE 55 at 37-39.

## CONCLUSION

For the foregoing reasons, Liu asks that the compassionate release be granted.

5

Respectfully submitted,

/s/ Jeremy Gordon
Jeremy Gordon
Jeremy Gordon, PLLC
1848 Lone Star Road, Suite 106
Mansfield, TX 76063
Tel: 972-483-4865
Fax: 972-584-9230
Email: Jeremy@gordondefense.com
TX Bar No. 24049810

*Counsel for Sijie Liu*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was duly served on all counsel of record via the Court's CM/ECF system this 19th day of August, 2022.

/s/ Jeremy Gordon